Riley Grace Borden*
(CO Bar No. 59580)
(WA Bar No. 62029)
INSTITUTE FOR JUSTICE
600 University Street, Suite 2710
Seattle, WA 98101
(206) 957-1300

*Admitted to the District Court for the Eastern District of Washington*

Jeff Rowes*
(TX Bar No. 24104956)
(NY Bar No. 4211991)
Christie Hebert*
(TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936

*Admitted pro hac vice*

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION**

LIGHTHOUSE CHRISTIAN MINISTRIES,

        *Plaintiff,*

v.

CITY OF WENATCHEE,

        *Defendant.*

Case No. 2:25-cv-00507-TOR

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT**

**RESPONSE TO MOTION TO DISMISS** - i

# TABLE OF CONTENTS

PAGE(S)

TABLE OF CONTENTS.................................................................................. ii

INTRODUCTION ..........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ....................................2

STANDARD...................................................................................................5

ARGUMENT .................................................................................................6

    I.    Lighthouse properly pled its § 1983 claims. ....................................6

    II.    LUPA's 21-day deadline does not apply to Lighthouse's § 1983 claims......6

    III.    Lighthouse has valid federal claims. ................................................8

        A.    Lighthouse states a substantive due process claim. ............................. 8

        B.    Lighthouse states an equal protection claim. ....................................... 14

        C.    Lighthouse states a takings claim. ....................................................... 17

CONCLUSION..............................................................................................20

CERTIFICATE OF SERVICE .....................................................................22

**INTRODUCTION**

The motion to dismiss should be denied. The City of Wenatchee revoked Lighthouse's conditional use permit (CUP) without warning, without a chance to fix purported violations, based on outright falsehoods, and solely to advance animus against the homeless. The Complaint explains in detail how the City's staff report deliberately and falsely blamed Lighthouse for things like random car crashes in the neighborhood. And how the City claimed the CUP had to be revoked for trivial infractions like parking a truck in an empty lot next door. But why would the City make things up? And if parking a truck next door is so awful, why wouldn't the City just ask Lighthouse not to park there? The Complaint answers that too. The neighbors just didn't want the homeless around, so the City fabricated bogus reasons to shut down a desperately needed soup kitchen.

In alleging this bad-faith scheme, Lighthouse plausibly states § 1983 claims under the substantive due process, equal protection, and takings clauses. Because this is a fact-intensive constitutional dispute about property deprivation, dismissal is disfavored. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) ("[W]here the property owner contends that it has been unconstitutionally deprived of property through governmental regulation, motions to dismiss . . . must be viewed with particular skepticism.").

RESPONSE TO MOTION TO DISMISS - 1

## FACTUAL AND PROCEDURAL BACKGROUND

Lighthouse is a nondenominational Christian nonprofit founded in 2009 in Wenatchee to operate a soup kitchen for homeless and low-income residents. Compl. (ECF 1) ¶ 15. By 2015, it was serving more than 125,000 meals a year. *Id.* ¶¶ 16, 19.

Needing more room, Lighthouse purchased a former warehouse at 410 South Columbia, an industrially zoned property. *Id.* ¶¶ 20–23. Because the zoning code required a conditional use permit (CUP) "for a 'Humanitarian service and shelter facility,'" Lighthouse applied for a CUP. *Id.* ¶¶ 26, 30. Its application detailed Lighthouse's plans to minimize impacts via relationships with neighbors and law enforcement, weekly litter patrols, communication with nearby businesses, limited service hours, lighting, fencing, and a parking plan. *Id.* ¶¶ 34–37.

After a hearing and a positive City staff recommendation, the Hearing Examiner granted Lighthouse the CUP on February 29, 2016. *Id.* ¶¶ 38–42. The CUP ran with the land and required a management plan for addressing negative guest behavior. *Id.* ¶¶ 44–45. That plan consisted of escalating steps: verbal warning, one-day exclusion, longer exclusion, and permanent exclusion with police notification for trespass charges upon any return. *Id.* ¶ 47. Lighthouse could condition access to the soup kitchen on good behavior at the property, but Lighthouse had no authority to control adults off its property. *Id.* ¶¶ 48–49. The City approved the management plan, understanding that serving the homeless would present challenges requiring

**RESPONSE TO MOTION TO DISMISS** - 2

cooperation from all stakeholders, such as first responders and health providers. *Id.* ¶¶ 53–60.

From 2016 to 2019, Lighthouse renovated the warehouse for $1.7 million and opened in summer 2019. *Id.* ¶¶ 61–65. Churches, nonprofits, and the government referred people for meals and quarterly resource fairs. *Id.* ¶¶ 68, 75–76.

Meanwhile, homelessness worsened statewide and in Wenatchee. *Id.* ¶¶ 83–84. The COVID-19 pandemic, the fentanyl crisis, and sharply increasing housing prices all contributed. *Id.* ¶¶ 83–88. And fentanyl use increased problematic public behavior by drug addicts. *Id.* ¶ 90. During this period, Lighthouse continued enforcing its four-step management plan while patrolling the neighborhood weekly for clean up and maintaining communication with nearby businesses and the City's homeless-services administrator. *Id.* ¶¶ 94–98, 100–01, 111–17. Lighthouse required guests to line up in an orderly manner. *Id.* ¶ 102. And it exceeded its parking obligations, even voluntarily leasing an adjacent lot to avoid using street parking, as Grace Church previously had done. *Id.* ¶¶ 106–10.

Despite these successful efforts, on May 12, 2025, the City issued an order revoking Lighthouse's CUP. *Id.* ¶ 136. Before the revocation, the City had never warned Lighthouse of violations, issued citations, or provided an opportunity to correct any alleged deficiency. *Id.* ¶¶ 142–44. Nor did the order itself permit Lighthouse to correct any alleged deficiency, even though many of the alleged issues

**RESPONSE TO MOTION TO DISMISS** - 3

were easily fixed—like unlocking gates or not parking in the leased lot. *Id.* ¶¶ 145–47. Before revoking Lighthouse's CUP, the City had never revoked a CUP without first providing notice and a chance to correct problems. *Id.* ¶ 151. For example, when Sage Hills Church arguably operated outside the scope of its CUP by opening a coffee shop, the City notified the church, rather than shut it down. *Id.* ¶ 152.

Lighthouse appealed the revocation to the municipal Hearing Officer, and the City produced a staff report asserting that the soup kitchen caused off-site public nuisances and increased public service calls. *Id.* ¶¶ 155, 163. Based on that report and alleged code violations identified in the City's revocation order, the Hearing Examiner upheld the revocation in August 2025. *Id.* ¶¶ 190, 236. Without a CUP, Lighthouse had to shut down its soup kitchen. *Id.* ¶ 236.

But the City's report grossly and willfully misrepresented the underlying call data to justify revoking the CUP. *Id.* ¶¶ 174–80. Lighthouse obtained that data via public records requests after the Hearing Examiner's decision and learned how egregiously the City had manipulated the data. *Id.* The Complaint explains the data manipulation in detail. *See generally id.* ¶¶ 182–226. In a nutshell, the staff report analyzed approximately 2,600 service calls between 2019 and 2025 around Lighthouse. *Id.* ¶ 183. Of those, 701 were for the Lighthouse property and 1,923 were for the surrounding blocks. *Id.* ¶ 186. The report blamed Lighthouse for *all* 1,923 off-site calls, even though *none* could be definitively attributed to Lighthouse

**RESPONSE TO MOTION TO DISMISS - 4**

or its guests. *Id.* ¶ 187. In just one of many examples in the Complaint, the City blamed Lighthouse for 103 calls at the intersection of Wenatchee Avenue and Spokane Street, but more than half involved traffic incidents such as DUIs, accidents, and road hazards. *Id.* ¶ 191. The remaining calls were welfare checks or ambiguously coded incidents with no evidence connecting the calls to Lighthouse. *Id.* ¶ 193. The staff report also omitted the broader call trends. *Id.* ¶ 204. Again, using data later obtained via public records, Lighthouse discovered that there was no trend of increased service calls associated with Lighthouse; indeed, calls for nuisances in the area around Lighthouse fell *after* Lighthouse opened in 2019 compared to the five years before. *Id.* ¶ 207. The City's report has no credibility. *Id.* ¶ 181.

Lighthouse alleges that the revocation was driven by pressure from nearby businesses who objected to Lighthouse's presence and mission of feeding the hungry. *Id.* ¶¶ 6–7. Because the City knew that destroying the soup kitchen based on animus would be illegitimate, the City fabricated a bogus pretext. *Id.* ¶¶ 228–35.

## STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

RESPONSE TO MOTION TO DISMISS - 5

## ARGUMENT

### I. Lighthouse properly pled its § 1983 claims.

The City mistakenly asserts that the Complaint failed to cite § 1983 and hence should be dismissed in its entirety. MTD at 10–11. The City is wrong twice over. First, Lighthouse cited § 1983 under the heading "Jurisdiction." Compl. ¶ 10. Second, as this Court has recognized, "[a] complaint does not need to expressly invoke citation to section 1983 in order to state a claim." *Hazelquist v. Klewin*, 2015 WL 5821590, at *5 n.7 (E.D. Wash. Oct. 5, 2015) (Rice, J.).

### II. LUPA's 21-day deadline does not apply to Lighthouse's § 1983 claims.

Lighthouse's § 1983 claims are timely and so are the remedies for those claims. For § 1983 actions, federal courts apply the forum state's personal-injury statute of limitations. *Boston v. Kitsap County*, 852 F.3d 1182, 1185 (9th Cir. 2017). In Washington, that's three years. *Id.* Lighthouse filed this case on December 16, 2025 to challenge the August 11, 2025 decision upholding the CUP revocation. Thus, Lighthouse's § 1983 claims were brought within three years and are timely. Injunctive relief is a remedy for those § 1983 claims. Indeed, "the central objective of the Reconstruction–Era civil rights statutes [such as Section 1983] is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or *secure injunctive relief*" in federal court. *Felder v. Casey*, 487 U.S. 131, 139 (1988) (emphasis added). The § 1983 claims and requests for injunctive relief are timely.

RESPONSE TO MOTION TO DISMISS - 6

Lighthouse does not bring any LUPA claims, so the Washington law is irrelevant. "The elements of, and defenses to, a federal cause of action are defined by federal law," and violations of the federal constitution "cannot be immunized by state law" like LUPA. *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 375–76 (1990) (cleaned up). LUPA's 21-day deadline doesn't apply to § 1983.

The City partly admits that, acknowledging "[c]ourts have established that some constitutional claims may be outside the scope of LUPA." MTD at 8. The City uses the word "some," but the City's *case* is unequivocal: "The court finds that a failure to file a timely LUPA petition does not bar federal claims challenging a local land use decision from proceeding in federal court." *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1165 (W.D. Wash. 2015). The City nevertheless argues that the remedy of injunctive relief is untimely. MTD at 4 ("Plaintiff's Request for Injunctive Relief is Time-Barred under Washington's Land Use Petition Act."). Yet the City has no coherent answer for why a particular remedy for a federal claim would be untimely. It invokes only "comity," urging respect for "a state or local government's process for making land use decisions." MTD at 9–10. But the case the City quotes—*Costello v. City of Vader*—is about a federal court declining to exercise supplemental jurisdiction over a LUPA claim following removal of federal claims from state court. MTD at 9 (quoting 2021 WL 2481838, at *2–3 (W.D. Wash. Apr. 19, 2021). A federal court declining to decide a LUPA

**RESPONSE TO MOTION TO DISMISS** - 7

claim and hear only federal claims is not evidence that "comity" requires federal courts to refuse to grant injunctions for federal claims.

### III.    Lighthouse has valid federal claims.

#### A.    Lighthouse states a substantive due process claim.

To state a substantive due process claim, a plaintiff must allege (1) "that a state actor deprived it of a constitutionally protected life, liberty or property interest" and (2) that the deprivation was "an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks v. Dressel*, 540 F.3d 1082, 1087–88 (9th Cir. 2008) (cleaned up). Lighthouse satisfies both requirements.

First, Lighthouse alleges the deprivation of a vested property right in its CUP and a liberty interest in helping those in need. Compl. ¶¶ 266–69. Because Wenatchee's ordinances "provide[] for the issuance . . . suspension and revocation" of CUPs, Lighthouse has shown "a sufficient claim of entitlement to its conditional use permit . . . to trigger the constitutional requirement of due process. *Kerley Indus., Inc. v. Pima County*, 785 F.2d 1444, 1446 (9th Cir. 1986). Here, the CUP ran with the land in perpetuity. Compl. ¶ 44. Relying on that fact, Lighthouse invested $1.7 million in renovations and paid off the mortgage. *Id.* ¶¶ 3, 44–45, 60–62, 81–82, 250, 267. Lighthouse also alleges that it was deprived of its liberty interest in helping those in desperate need by operating a charitable, non-commercial soup kitchen. *Id.*

RESPONSE TO MOTION TO DISMISS - 8

¶¶ 266, 269. *See, e.g.*, *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990) (liberty interest in rescuing a drowning boy); *Maxwell v. County of San Diego*, 708 F.3d 1075 (9th Cir. 2013) (liberty interest in taking a gunshot victim to the hospital).

The City doesn't contest that it deprived Lighthouse of property and liberty interests. *See* MTD at 12–13. Rather, the City argues Lighthouse "acknowledges the City's legitimate reasons supporting the revocation of the CUP." *Id.* at 14. The City then ticks off various allegations that supposedly show a rational basis for shutting down Lighthouse, such as "public and chronic nuisances." *Id.* at 14–15.

But the City ignores the substance of the Complaint—that revoking Lighthouse's CUP didn't, based on the facts, rationally advance any legitimate government interests. "Although rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis . . . by adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590–91 (9th Cir. 2008) (explaining that plaintiffs may "rebut the facts" to show that the government's action "could not reasonably be viewed to further the asserted purpose").

*Full Circle of Living & Dying v. Sanchez* illustrates how a nonprofit wins a substantive due process claim. There, a nonprofit providing advice to the dying about home funerals was ordered to become a state-licensed funeral home. 2023 WL

RESPONSE TO MOTION TO DISMISS - 9

373681, at *2 (E.D. Cal. Jan. 24, 2023). California pointed to legitimate interests—health and consumer protection—for the license. *Id.* at *13. But the nonprofit won on summary judgment because "the undisputed facts of record support plaintiffs' argument" that the nonprofit's private-home services "would [not] be made safer by having a building in which to conduct these services and a room to store or prepare human remains." *Id.*

If the nonprofit in *Full Circle* was able to *win* summary judgment by showing that licensure was irrational and violated substantive due process, Lighthouse has at least stated a claim that the City's revocation decision was just as irrational. The City didn't rationally advance any legitimate interest when it: (1) revoked Lighthouse's CUP as a first resort when less extreme actions were available; (2) blamed Lighthouse for the behavior of other people off Lighthouse's property; (3) punished Lighthouse for following its City-mandated management plan; and (4) revoked Lighthouse's CUP based on prejudice against the homeless. Each point is briefly explained below.

**Irrational to revoke as a first resort:** Plaintiffs win substantive due process cases when they prove a lack of proportion between the government's end and the means it uses. In *Cornwell v. Hamilton*, for example, it violated substantive due process to require African hair braiders to go through an onerous and pointless cosmetology program just to braid hair. 80 F. Supp. 2d 1101, 1106 (S.D. Cal. 1999).

**RESPONSE TO MOTION TO DISMISS** - 10

Here, Lighthouse alleges a similarly irrational means-ends mismatch. For example, Lighthouse leased a vacant property next door to park its food-delivery trucks to free up space in its own lot for guests. Compl. ¶¶ 106–10. A church had previously leased that lot for the same purpose. *Id.* Yet, the City objected when Lighthouse did it. *Id.* ¶ 146. The rational thing to do is to ask Lighthouse to stop parking there. But the City never warned, much less cited, Lighthouse for anything, let alone (lawfully) leasing the lot next door. *Id.* ¶¶ 142–48, 153. Instead, the City went nuclear, shutting down the soup kitchen without warning. That is akin to a city towing your car, crushing it, and selling it for scrap because the meter expired 15 minutes ago. Sure, it abates the parking problem, but that's not a rationally proportional response. Likewise, it wasn't rational for the City to shutter the soup kitchen for other trivial infractions like a locked gate or using an alternate entrance—especially when those alleged infractions were promptly fixed upon notice. Compl. ¶¶ 4, 147, 153.

And, even if there were some bigger problem, which the Complaint disputes, the City can't rationally destroy a much-needed soup kitchen without warning and any opportunity to correct the problem. *Id.* ¶¶ 4, 151, 235. To borrow from a recent free speech case, the City's destruction of the soup kitchen "furthers [its] interests the way an atom bomb would further the eradication of a residential ant infestation." *Richwine v. Matuszak*, 148 F.4th 942, 955 (7th Cir. 2025). The total absence of proportion demonstrates that the City "lack[ed] any 'reasonable justification in

RESPONSE TO MOTION TO DISMISS - 11

service of a legitimate governmental objective.'" *Shanks*, 540 F.3d at 1088.

**Irrational to revoke based on the behavior of other people:** As explained in the facts above, Lighthouse alleges the City deliberately manipulated emergency call data to falsely attribute nearly 2,000 emergency calls to Lighthouse. For example, the staff report attributed random car crashes and DUIs at the intersection of Wenatchee and Spokane to Lighthouse. Compl. ¶¶ 191–96. Again, imagine a city towing your car, crushing it, and selling it for scrap, but this time because *other people* got parking tickets. Or imagine the state bar revoking your law license because *other lawyers* committed malpractice. That is what the Complaint is alleging here: that the City revoked Lighthouse's CUP because of emergency calls about *other people* unrelated to Lighthouse who did things off Lighthouse's property. It is irrational to address problems like DUIs and car crashes at the corner of Wenatchee and Spokane by punishing a soup kitchen that had nothing to do with them.

**Irrational to revoke because Lighthouse followed the City-approved management plan:** Lighthouse alleges the City cited emergency calls to the soup kitchen itself between 2019 and 2025 as a basis for revoking the CUP. But half of those calls were mandated by the management plan that the City required and approved. *Id.* ¶¶ 214–15. It is arbitrary to punish a property owner for taking steps that the government requires. Though not directly considering substantive due process, the court in *Catherine H. Barber Memorial Shelter, Inc. v. Town of North*

**RESPONSE TO MOTION TO DISMISS** - 12

*Wilkesboro* held that it was "paradoxical" and "arbitrary" to require a homeless shelter to have sidewalks, but then deny a CUP because homeless people walking on the sidewalks might "slip right into" traffic. 576 F. Supp. 3d 318, 334–35 (W.D.N.C. 2021). So too here. The City cannot require Lighthouse to call emergency services and then punish it for doing so. And other calls from Lighthouse were for legitimate reasons such as ambulances. Compl. ¶¶ 218–25.

**Irrational to revoke based on prejudice against the homeless:** Lighthouse alleges that the City's stated justifications for the revocation were a pretext and the real reason was appeasing a handful of politically connected property owners who didn't like the homeless people Lighthouse served. *Id.* ¶¶ 7, 228. The City knew that it could not openly revoke Lighthouse's permit based "on an irrational prejudice" against the homeless. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448–50 (1985) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." (citation omitted)). So the City, Lighthouse alleges, made up reasons to justify eliminating the soup kitchen. *Id.* Lighthouse is entitled to prove that the City's real reason for the revocation is an irrational prejudice that violates substantive due process. *See Shanks*, 540 F.3d at 1089 (evidence of "pretext" may demonstrate "constitutionally arbitrary" conduct).

The cases that the City cites confirm that conclusion. Take *Samson v. City of Bainbridge Island*, 683 F. Supp. 2d 1164 (W.D. Wash. 2010) (cited by MTD at 13–

RESPONSE TO MOTION TO DISMISS - 13

14). That case was decided on summary judgment, after discovery. *Id.* at 1167–68, 1178–79. It turned on the plaintiffs' failure to provide evidence that the city acted to prevent plaintiffs from developing their property due to a neighborhood association's pressure. *Id.* at 1178–79. Though the plaintiff lost on the facts, *Samson* illustrates that allegations like those here—the City stripped Lighthouse of its property rights due to political pressure—state a substantive due process claim.

The same is true for *John Ketch LLC v. San Juan County*, which features two different decisions. *Compare* 759 F. Supp. 3d 1121 (W.D. Wash. 2024), *with* 2025 WL 1208210 (W.D. Wash. Apr. 25, 2025). The City cites only the first decision, where the court initially dismissed the due process claim without prejudice because the plaintiff failed to plead a protected property interest. MTD at 14; 759 F. Supp. 3d at 1133–34. That is not this case. Critically, after amendment, the court in *John Ketch* denied the county's second motion to dismiss, holding that allegations that the county "purposefully delayed processing its building application" by "repeatedly and arbitrarily revising the parameters" were enough to state a substantive due process claim. 2025 WL 1208210, at *3–5. So, too, here where Lighthouse alleges the City acted irrationally when it revoked Lighthouse's CUP.

**B.    Lighthouse states an equal protection claim.**

The Equal Protection Clause requires "that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439. Lighthouse states an

RESPONSE TO MOTION TO DISMISS - 14

equal-protection claim under a "class-of-one" theory by alleging that the City: "(1) intentionally (2) treated [Lighthouse] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake County*, 637 F.3d 1013, 1021–22 (9th Cir. 2010).

The City's only equal-protection argument is that "Lighthouse fails to define any protected class or identify any comparator that the City treated differently from Lighthouse." MTD at 16–17. That argument reads one paragraph of the Complaint, ¶ 273, in isolation. *Id.* But the question is whether the Complaint, as a whole, identifies comparators "similar in those respects relevant to [Wenatchee's] policy." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014). It does.

In fact, Lighthouse identifies specific comparators. Consider parking. The City revoked Lighthouse's CUP in part because Lighthouse leased an adjacent lot. Compl. ¶ 146. But the Complaint alleges that Grace Church previously leased the same lot, and the City never cited or penalized Grace Church. *Id.* ¶¶ 109–10. That's two nonprofits using the same property for the same purpose, but only one was punished. An equal-protection comparator cannot get more direct. Or how about revoking CUPs as a first resort? Lighthouse alleges the City never previously revoked a CUP without first "providing notice of alleged deficiencies and an opportunity to correct." *Id.* ¶ 151. Yet it did so to Lighthouse. By contrast, when Sage Hill Church operated outside the scope of its CUP by opening a coffee shop,

RESPONSE TO MOTION TO DISMISS - 15

"the City notified the church of the alleged violation . . . [and] did not close down the church." *Id.* ¶ 152. That's two nonprofits accused of CUP violations, but only Lighthouse got a revocation without warning. That's apples-to-apples.

More generally, Lighthouse alleges that the City treated it differently from every other Wenatchee property owner. *Id.* ¶¶ 273–74. That virtually every property owner is a legitimate comparator isn't a pleading failure but a result of the fact that the City simply doesn't do to others what it did to Lighthouse:

- Permanently shut it down, Compl. ¶¶ 136, 251;
- Without warning, *id.* ¶¶ 142–43;
- Without any opportunity to correct alleged violations, *id.* ¶¶ 144–45.
- Based on egregiously misrepresented evidence, *id.* ¶¶ 163–212;
- To placate private business owners, *id.* ¶¶ 227–35.
- Who objected to Lighthouse's mission, *id.* ¶¶ 6–7, 262.

The last bullet point is central: Lighthouse alleges that the City acted out of hostility toward the homeless population it served. But "mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases" for differential treatment. *Cleburne*, 473 U.S. at 448 (invalidating a city's refusal to grant a CUP because people didn't want the mentally handicapped in their neighborhood). That means "unsubstantiated fears of misconduct by homeless individuals" cannot be a rational basis. *Catherine H. Barber*, 576 F. Supp. 3d at 341–43 (granting summary judgment on equal-protection

RESPONSE TO MOTION TO DISMISS - 16

claim to homeless shelter denied CUP). Lighthouse states a claim here.

### C.    Lighthouse states a takings claim.

The City's motion to dismiss the takings claim focuses on the wrong thing—the entire property at 410 South Columbia. *See* MTD at 18–19 ("There is no assertion by Lighthouse that its property has <u>no</u> productive or economically beneficial use outside of its operation as a soup kitchen."). But Lighthouse's takings claim isn't about the entire parcel. It's about the CUP, which itself is a property right. Compl. ¶¶ 44, 278; Wenatchee Code § 10.65.050 (a CUP "run[s] with the land"). Like a lien, easement, trade secret, contract, or other property right different from fee ownership of land, a CUP is a "property right[] . . . deserving of the protection of the Taking Clause[.]" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) (listing intangible property rights); *see also Tyler v. Hennepin County*, 598 U.S. 631, 639 (2023) (property interest in the value of home in excess of debt).

Revoking the CUP extinguished Lighthouse's property right in its entirety. The City's "total destruction" of the CUP "is not a mere consequential incidence of a valid regulatory measure." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 77 (1982) (cleaned up). Rather, it was a "taking of substantive rights in specific property" that triggers the Takings Clause. *Id.* (citation omitted). Because a CUP is the property interest, Lighthouse's claim is simple: the City took its CUP to satisfy the prejudice of neighboring property owners. *See* Compl. ¶¶ 6–7, 228, 276–83. If

**RESPONSE TO MOTION TO DISMISS** - 17

proven, that seizure violates the Takings Clause either because it was not for public use or because the City didn't pay just compensation.

Alternatively, the CUP revocation is a regulatory taking: the revocation either "completely deprives [Lighthouse] of all economically beneficial use of property" or it constitutes a taking under *Penn Central*. *McClung v. City of Sumner*, 548 F.3d 1219, 1225–26 (9th Cir. 2008) (discussing the four inverse condemnation theories).

First, revoking the CUP was a taking because it completely destroyed Lighthouse's economic use of the CUP. In *Pennsylvania Coal Co. v. Mahon*, Justice Holmes famously declared that a restriction on mining coal from a coal mine that "make[s] it commercially impracticable to mine certain coal has very nearly the same effect for constitutional purposes as appropriating or destroying it" and therefore was a taking. 260 U.S. 393, 414–15 (1922); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) (forbidding construction of homes on residential property is a taking). Just as prohibiting mining in *Mahon* or preventing homebuilding in *Lucas* extinguished all practical value in the relevant property interests, revoking the CUP eliminated all practical value in Lighthouse's right to operate a soup kitchen. That's enough to state a claim.

Second, the CUP revocation is plausibly a *Penn Central* taking. The *Penn Central* analysis involves "ad hoc inquiries, . . . designed to allow careful examination and weighing of all the relevant circumstances." *Tahoe-Sierra Pres.*

**RESPONSE TO MOTION TO DISMISS** - 18

*Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (cleaned up). This ad hoc inquiry considers "[1] the regulation's economic impact on the claimant; [2] the extent to which the regulation interferes with distinct investment-backed expectations; and [3] the character of the government action." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

Here, Lighthouse states a claim under all three prongs: (1) revoking the CUP has had a devastating impact on Lighthouse because its only plausible use as a 501(c)(3) for its property in this industrial zone is a soup kitchen; (2) the revocation destroyed Lighthouse's investment-backed expectations that it could use its extensively renovated building as a soup kitchen; and (3) the City's actions—revoking without warning, offering no chance to correct, using manipulated data, advancing private prejudices—are illegitimate. *Penn Central*'s fact-intensive inquiry generally "cannot be decided at the pleadings stage" and thus Lighthouse has a claim under the *Penn Central* theory, too. *FFV Coyote LLC v. City of San Jose*, 637 F. Supp. 3d 761, 770 (N.D. Cal. 2022).

The City's only relevant objection is that the taking clause isn't implicated when regulation aims "to stop illegal activity or abate public nuisances." MTD at 20. That legal proposition is correct as a general matter, but inapplicable here. True, the City *says* that abating a nuisance "is one of several legitimate reasonings relied upon by the City in revoking Lighthouse's CUP." *Id.* But the Complaint, whose

**RESPONSE TO MOTION TO DISMISS** - 19

allegations must be taken as true, says the opposite. After discovery, the City can reassert its nuisance defense to the takings claim based on admissible evidence. At this stage, however, Lighthouse plausibly alleges a regulatory taking.

## CONCLUSION

Because Lighthouse brings timely and plausible § 1983 claims, the motion to dismiss should be denied.

Lighthouse also respectfully requests oral argument.

RESPONSE TO MOTION TO DISMISS - 20

Dated: February 20, 2026

Respectfully submitted,

Jeff Rowes*
(TX Bar No. 24104956)
(NY Bar No. 4211991)
Christie Hebert*
(TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
Phone: (512) 480-5936
Facsimile: (703) 682-9321
Email: jrowes@ij.org;
chebert@ij.org

*Admitted pro hac vice

s/ Riley Grace Borden*
(CO Bar No. 59580)
(WA Bar No. 62029)
INSTITUTE FOR JUSTICE
600 University Street, Suite 2710
Seattle, WA 98101
Phone: (206) 957-1300
Facsimile: (206) 957-1301
Email: rgborden@ij.org

*Admitted to the District Court for the Eastern District of Washington

**RESPONSE TO MOTION TO DISMISS** - 21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2026, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF, causing a copy to be served on all counsel of record via Notice of Electronic Filing.

Dated: February 20, 2026                    Respectfully submitted,

|  |  |
|---|---|
| Jeff Rowes* | s/ Riley Grace Borden* |
| (TX Bar No. 24104956) | (CO Bar No. 59580) |
| (NY Bar No. 4211991) | (WA Bar No. 62029) |
| Christie Hebert* | INSTITUTE FOR JUSTICE |
| (TX Bar No. 24099898) | 600 University Street, Suite 2710 |
| INSTITUTE FOR JUSTICE | Seattle, WA 98101 |
| 816 Congress Avenue, Suite 970 | Phone: (206) 957-1300 |
| Austin, TX 78701 | Facsimile: (206) 957-1301 |
| Phone: (512) 480-5936 | Email: rgborden@ij.org |
| Facsimile: (703) 682-9321 |  |
| Email: jrowes@ij.org; | *Admitted to the District Court for the |
| chebert@ij.org | Eastern District of Washington |

*Admitted pro hac vice

RESPONSE TO MOTION TO DISMISS - 22