UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LIGHTHOUSE CHRISTIAN MINISTRIES,<br><br>                    Plaintiff,<br><br>    v.<br><br>CITY OF WENATCHEE,<br><br>                    Defendant. | NO. 2:25-CV-0507-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 13). The parties requested oral argument. The Court has reviewed the record and files herein, determined that oral argument is unnecessary in this matter, and is fully informed. For the reasons discussed below, Defendant's motion is **GRANTED**.

**BACKGROUND**

The following facts are drawn from Plaintiff's complaint (ECF No. 1) and construed in the light most favorable to Plaintiff. *Schwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000). Plaintiff Lighthouse Christian Ministries is a

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

Washington charity located in Wenatchee, Washington that was founded in 2009 to provide a soup kitchen for homeless and low-income residents.  ECF No. 1 at ¶ 15.  From 2009 to 2015, Plaintiff operated out of a one-room location in downtown Wenatchee serving on average 125,000 servings per year.  *Id.* at ¶ 18.  Due to the increasing demand of Plaintiff's services over the years, Plaintiff sought to expand and purchased a warehouse situated in an industrial zone in 2015 (the "Property").  *Id.* at ¶¶ 20,21.  Plaintiff's use of the Property as a soup kitchen required a conditional use permit ("CUP") pursuant to Wenatchee, Wa. City Code § 10.08.075, which Plaintiff was granted on February 29, 2016.  *Id.* at ¶¶ 26,42.  The CUP was subject to fourteen conditions of approval, including the requirement that Plaintiff submit a management plan identifying off-site impacts from the facility and the prevention measures in place.  ECF No. 1 at ¶ 45.  Plaintiff submitted its management plan on August 16, 2016.  *Id.* at ¶ 46.

After three years of renovating the Property, Plaintiff began operating the Property as a soup kitchen in the summer of 2019.  *Id.* at ¶¶ 61,65.  The Property operated as a soup kitchen from 2019 until May 12, 2025 when Defendant issued an order revoking Plaintiff's CUP.  *Id.* at ¶ 136.  The order asserted that Plaintiff violated conditions of the CUP, provisions of the Wenatchee municipal code, and provisions of the international building code.  *Id.* at ¶ 139.  Plaintiff never received any notice of any violation prior to the CUP revocation.  *Id.* ¶¶ 142-144.  On July

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 2

15, 2025, Defendant issued a new revocation order that included another ground for revocation: Plaintiff's new case management system expanded operations beyond what the CUP authorized. *Id.* at ¶ 159. Plaintiff appealed the revocation to the city hearing officer and a hearing was held in August 2025. *Id.* at ¶ 177. The city hearing officer upheld the revocation. Plaintiff did not appeal the decision.

On December 16, 2025, Plaintiff filed the instant complaint against Defendant alleging that its revocation of the CUP was a Fourteenth Amendment substantive due process violation, a Fourteenth Amendment equal protection violation, and a Fifth Amendment taking without just compensation. ECF No. 1 at ¶¶ 264-283. Among other relief, Plaintiff seeks an injunction prohibiting Defendant from enforcing the revocation of the CUP. *Id.* at 63.

## DISCUSSION

Defendant moves to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13.

### A. Legal Standard

A motion to dismiss for failure to state a claim "tests the legal sufficiency" of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 3

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

When analyzing whether a claim has been stated, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" however "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

elements could be proven on the facts pled.  The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences.  *Id.*

The Court "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 662.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (citation omitted).  A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro*, 250 F.3d at 732.

**B. LUPA**

Defendant contends Plaintiff's request for injunctive relief is time-barred under Washington's Land Use Petition Act ("LUPA").  ECF No. 13 at 4.  Plaintiff responds that it brings its claims under § 1983, not LUPA, and the claims are timely for § 1983 purposes.  ECF No. 15 at 8-9.

LUPA states that it "shall be the exclusive means of judicial review of land use decisions." RCW 36.70C.030(1).  A claimant may petition a court for review under LUPA if it "is filed and served . . . within twenty-one days of the issuance of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 5

the land use decision." RCW 36.70C.040(2). Washington courts have consistently held that failure to timely file a LUPA petition bars judicial review of those claims. *See, e.g.*, *Wenatchee Sportsmen Ass'n v. Chelan Cnty.*, 141 Wash. 2d 169, 181 (2000) ("Because [LUPA] prevents a court from reviewing a petition that is untimely, approval of the rezone became valid once the opportunity to challenge it passed."); *Habitat Watch v. Skagit Cnty.*, 155 Wash. 2d 397, 406 (2005). However, several federal courts have reasoned that failure to comply with LUPA's 21-day deadline does not preclude federal constitutional claims brought under § 1983. *Muffett v. City of Yakima*, No. CV-10-3092-RMP, 2011 WL 5417158, at *4 (E.D. Wash. Nov. 9, 2011) ("In light of the supremacy of federal law, a state legislative act cannot modify § 1983 and impose an exhaustion requirement."); *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1166 (W.D. Wash. 2015) ("[T]he court construes LUPA's 21-day deadline to not otherwise bar federal constitutional claims brought under Section 1983 in federal court."). Thus, Plaintiff's claims are not time-barred if properly pleaded as § 1983 claims.

Defendant further argues that Plaintiff's request for injunctive relief should be divorced from Plaintiff's constitutional claims and outright denied because it essentially seeks to circumvent LUPA's procedural deadlines. ECF No. 13 at 8. Defendant asserts that the principles of the doctrine of comity as described in

*Costello, City of Vader*, No. C20-6251 BHS-TLF, 2021 WL 2481838 (W.D. Wash. Apr. 19, 2021), are applicable in this case.  Plaintiff argues that injunctive relief is an appropriate remedy for constitutional violations and *Costello* is distinguishable.  ECF No. 15 at 8-9.

The plaintiff in *Costello* brought state law claims seeking judicial review of a land-use decision pursuant to RCW 36.70C as well as separate federal constitutional claims seeking damages pursuant to § 1983.  *Costello*, 2021 WL, at *1.  The undersigned reasoned that comity weighed in favor of declining supplemental jurisdiction over the plaintiff's state law claims because they were brought under LUPA and "[c]omity is especially important when considering state law claims concerning a state or local government's process for making land use decisions."  *Id.*, at *3.  Moreover, the undersigned reasoned that the nature and scope of plaintiff's federal claims were distinct from her state law claims as "the crux of plaintiff's state law claims is whether the hearing examiner erred in the land use decision."  *Id.*

Here, Plaintiff brings federal law claims pursuant to § 1983, not LUPA.  The Court is not persuaded that federal remedies otherwise available for claims brought under § 1983 should be precluded by LUPA.  *See, e.g.*, *Sante Fe Springs Realty Corp. v. City of Westminster*, 906 F. Supp. 1341 (C.D. Calif. 1995) (granting injunctive relief on § 1983 first amendment claim where the defendant "applied

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 7

improper criteria and articulated pretextual reasons when it denied the CUP application"). The Court declines to dismiss Plaintiff's request for injunctive relief outright.

**C. 42 U.S.C. § 1983**

Defendant next argues that Plaintiff failed to properly plead its claims as constitutional violations pursuant to § 1983. ECF No. 13 at 10-11. Plaintiff responds that it properly identified § 1983 as the basis for its claims in the complaint. ECF No. 15 at 8. Indeed, Plaintiff invoked § 1983 within its complaint. ECF No. 1 at ¶ 10.

Defendant further argues that Plaintiff has failed to plead facts to support its constitutional claims. ECF No. 13 at 10. On that point, the Court agrees with Defendant.

**1. Substantive Due Process**

Plaintiff brings substantive due process claims alleging that "[b]y revoking the CUP, the City arbitrarily and irrationally deprived Lighthouse of its liberty interest in feeding the needy, of its vested property interest in its CUP, and of its property interest in using 410 S Columbia St, Wenatchee, WA 98801-3032 as a soup kitchen for the needy." ECF No. 1 at ¶ 269.

Defendant argues Plaintiff's claim fails because Plaintiff's bare allegations cannot establish that Defendant's decision in pulling the CUP was not rationally

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 8

related to a legitimate government interest.  ECF No. 13 at 13-15.  Plaintiff responds that it was deprived of its property interest in the CUP and a liberty interest in helping those in need and sufficiently rebutted a presumption of rationality to overcome dismissal.  ECF No. 15 at 10-12.  Defendant replies that Plaintiff has not sufficiently pled a liberty interest in running a soup kitchen and again argues that the revocation of the CUP was rationally related to a legitimate government interest.  ECF No. 16 at 4-6.

Substantive due process differs from procedural due process "by barring certain government actions regardless of the fairness of the procedures used to implement them, it serves to prevent governmental power from being 'used for purposes of oppression.' " *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Where a governmental action does not infringe on a fundamental right, it need only have a "reasonable relation to a legitimate state interest to justify the action." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).  "When executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking 'reasonable justification in the service of a legitimate government objective.'" *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  For example, in *Shanks*, the Ninth Circuit concluded plaintiffs failed to state a substantive due process claim where there was

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 9

no suggestion of "a sudden change in course, malice, bias, pretext or, indeed, anything more than a lack of due care on [the defendant's] part." *Id.* at 1089.

Here, Plaintiff alleges in its complaint that the May 12, 2025 revocation order "asserted that Lighthouse violated the conditions of the CUP, provisions of the Wenatchee municipal code, and provisions of the international building code." ECF No. 1 at ¶ 139.  The order included an explanation that Plaintiff violated Condition #2 of its CUP: "Violation: Site management has not successfully implemented, addressed, or mitigated impacts to the public, businesses and City Services as documented in increased service calls, code enforcement complaints and WCC [Wenatchee City Code] violations." *Id.* at ¶ 141.  The amended revocation order issued on July 15, 2025 added an additional grounds for revocation: "the new case management system allegedly expanded operations beyond what the CUP authorized." *Id.* at ¶ 159.

Plaintiff asserts that the staff report later produced by Defendant explained the revocation was due to offsite impacts resulting from the soup kitchen that violated city code and resulted in nuisance complaints.  ECF No. 1 at ¶ 166.  The staff report laid out three categories of evidence in support: (1) public service calls concerning the surrounding area had increased; (2) surrounding businesses had complained; and (3) the homeless service administrator identified impacts to surrounding businesses by people who had used the soup kitchen.  *Id.* at ¶ 167.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 10

The city staff claimed that such evidence supported a finding that Plaintiff had failed to carry out its management plan and implement nuisance prevention measures.  *Id.* at ¶ 168.

Plaintiff alleges that the first category of evidence, the public service calls, were grossly misrepresented by Defendant in the staff report.  ECF No. 1 at ¶ 174. Plaintiff asserts that Defendant deliberately made a false and misleading portrayal of the underlying service call data to justify revoking Plaintiff's CUP as a pretext. *Id.* at ¶¶ 179-182.  Plaintiff alleges that the actual reason for the revocation was to appease a group of politically connected business owners who own property in the vicinity of the Property.  ECF No. 1 at ¶ 228.

Had the reported increase in service calls been Defendant's only reason for revoking the CUP, Plaintiff's substantive due process claim may have survived dismissal, but Plaintiff states in the complaint that Defendant presented other justifications for revocation, namely, "a locked gate, the use of an alternative entrance, attempts to provide additional off-street parking, and the behavior of guests off Lighthouse's property."  *Id.* at ¶ 234.  Plaintiff contends these were manufactured reasons yet concedes elsewhere in the complaint that they existed.

First, Plaintiff asserts in the complaint that it took steps to correct alleged deficiencies as soon as it received the May 12, 2025 revocation order.  "For example, it redesignated the handicapped accessible entrance as its main entrance,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 11

and unlocked the gate identified by the City. It took approximately one hour to make these fixes." *Id.* at ¶ 153. Moreover, Plaintiff does not allege or argue that the reported deficiencies had no substantial relation to a legitimate government purpose but rather contends that it was deprived of a warning and an opportunity to correct the problems prior to revocation. ECF No. 15 at 12-13. Plaintiff's citation to *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) is unavailing as the issue there was whether requiring African hair braiders to attend cosmetology school was substantially related to the State of California's interest in the health and safety of its citizens. *Cornwell*, 80 F. Supp. 2d at 1106. Here, Plaintiff's argument focuses on the procedural shortcomings, not that the alleged deficiencies themselves were irrational or illegitimate.

Second, the complaint states that the staff report identified nuisance behavior related to people urinating and defecating on property surrounding the soup kitchen. ECF No. 1 at ¶ 173. Plaintiff does not dispute these occurrences may have happened but argues that it cannot control what adults do off the property and any such conduct was not a violation of Plaintiff's management plan. *Id.* "[T]he 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance *any* legitimate governmental purpose." *Shanks*, 540 F.3d at 1088 (emphasis added) (citation omitted); *see also Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994) ("[W]e do not

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 12

require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." (emphasis in original)).  Abatement of a nuisance is a legitimate governmental purpose.  *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1239 (9th Cir. 2009).  Therefore, the Court finds that Plaintiff fails to state a substantive due process claim and that further amendment cannot cure this failure.

### 2.  Equal Protection

Defendant argues Plaintiff's complaint fails to sufficiently plead any facts supporting a claim under the equal protection clause of the Fourteenth Amendment.  ECF No. 13 at 16.

"To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).  An individual plaintiff may bring an equal protection claim under the "class of one" theory where the claim is "premised on unique treatment rather than on classification." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  To bring an equal protection claim under the "class of one" theory, a plaintiff must that allege they were intentionally treated differently than other

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 13

similarly situated individuals without a rational basis.  *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

In its complaint, Plaintiff brings a "class of one" claim alleging that it is "similarly situated to other social-service providers, to other CUP holders in general, and to other property owners that may from time to time commit technical infractions of the zoning code."  ECF No. 1 at ¶ 273.  Defendant contends Plaintiff has failed to identify any comparator that the Defendant treated differently from Plaintiff without any rational basis.  ECF No. 13 at 16.  Plaintiff responds that the complaint identifies comparators treated differently.

First, Plaintiff points to the allegation that it had leased a neighboring lot to the Property for overflow parking and was penalized by Defendant, while another non-profit, Grace City Church, had previously leased the same lot for private parking but was never penalized.  ECF Nos. 15 at 17, 1 at ¶¶ 106-110.  Plaintiff additionally references the complaint's allegation that "[b]efore the May 12, 2025 revocation order, the City had never revoked a CUP without providing notice of alleged deficiencies and an opportunity to correct."  ECF Nos. 15 at 17, 1 at ¶ 151.  As an example, the complaint asserts that another CUP holder, Sage Hills Church, opened a coffee shop on its premises that was alleged to be in violation of its CUP, but Defendant merely notified the church of the alleged violation and did not close it down as it did Plaintiff.  ECF Nos. 15 at 17-18, 1 at ¶ 152.  Finally, Plaintiff

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14

asserts that every other Wenatchee property owner is a legitimate comparator and Plaintiff was treated differently because Defendant's animus toward the homeless population.  ECF No. 15 at 18.

Defendant replies that Plaintiff has failed to sufficiently state how these identified comparators are nearly identical to Plaintiff for a "class of one" equal protection claim.  ECF No. 16 at 6-7.  The Court agrees.

"[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. For Town of Skaneateles*, 610 F.3d 55, 59 (9th Cir. 2010) (quoting *Clubside, Inc. v. Valentine*, 468 F.3d 144, 159 (2d Cir. 2006)).  "[A] plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 60 (quoting *Clubside, Inc.*, 468 F.2d at 159)).

Under this standard, Plaintiff fails to identify how Grace City Church and Sage Hills Church were similarly situated to Plaintiff to withstand dismissal.  Nor does Plaintiff's allegation that all Wenatchee property owners fall within the similarly situated category suffice.  Plaintiff's equal protection claim is therefore

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 15

dismissed with leave to amend.

### 3. Takings

Plaintiff argues that Defendant's revocation of the CUP extinguished Plaintiff's property right in the CUP itself.  ECF No. 15 at 19.  Plaintiff contends that the CUP was taken to satisfy the prejudice of the neighboring property owners.  *Id.* at 19-20.  Alternatively, Plaintiff argues that the revocation was a regulatory taking.  *Id.* at 20.

The Ninth Circuit has recognized four theories of takings claims: "(1) a physical invasion of property, (2) that a regulation completely deprives a plaintiff of all economically beneficial use of property, (3) a general regulator takings challenge pursuant to *Penn Central*, or (4) a land-use exaction violating the standards set forth in *Nollan* and *Dolan*." *McClung v. City of Sumner*, 548 F.3d 1219, 1225 (9th Cir. 2008), *abrogated on other grounds by Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013).

Plaintiff has failed to plead a takings claim under any of these theories. First, Plaintiff contends that the revocation deprived it of all economically beneficial use of the CUP itself.  ECF No. 15 at 20.  Plaintiff does not present any case law that supports its argument that the diminution in value to the CUP itself constituted a taking.  A CUP grants a landowner the right to a particular land use, thus the property interest in a CUP is analogous to an interest in that particular land

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 16

use.  *See Bennett v. City of Kingman*, 543 F. Supp. 3d 794, 808 (D. Ariz. 2021). Revocation of a CUP extinguishes the right to a particular land use, therefore, the proper consideration for a regulatory takings claim is diminution in the value of the land due to the revocation.  *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 (1992) ("As we have said on numerous occasions, the Fifth Amendment is violated when land-use regulation . . . *denies an owner economically viable use of his land*.") (internal quotation marks and citation omitted) (emphasis in original). Plaintiff's complaint does not allege that the CUP revocation deprived it of all beneficial economic use of the Property.

Alternatively, Plaintiff argues that the CUP revocation was plausibly a *Penn Central* taking.  ECF No. 15 at 21.  Regulatory actions that do not constitute *per se* takings for Fifth Amendment purposes or completely deprive an owner of all beneficial use of a property are governed by *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  *Lingle v. Chevron*, 544 U.S. 528, 528 (2005). Under *Penn Central*, a court must consider "the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action." *Id.* at 528-29.

Plaintiff's complaint does not sufficiently allege facts relevant to the *Penn Central* analysis such as an occurrence of a diminution in economic value of the Property due to the CUP revocation.  *Bridge Aina Le'a, LLC v. Land Use*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 17

*Commission*, 950 F.3d 610, 630-31 (9th Cir. 2020) ("[W]e compare the value that has been taken from the property with the value that remains in the property.").

Defendant additionally argues that Plaintiff's takings claim fails because one of the reasons for the CUP revocation was to abate a nuisance. "Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 n.22 (1987); *see also Akshar Glob. Invs. Corp. v. City of Los Angeles*, 817 F. App'x 301, 304 (9th Cir. 2020) ("[T]o the extent the City's decision to revoke the CUP was based on concerns about nuisance caused by Appellants' Motel, the Takings Clause is not implicated because a locality may act in response to criminal activity."). However, the public nuisance "must independently restrict the owner's intended use of the property." *Lingle*, 544 U.S. at 538.

Based on the complaint, the Court cannot definitively conclude that the claimed nuisances would independently restrict Plaintiff's use of the property at this stage in the proceedings. Therefore, Plaintiff's takings claim is dismissed with leave to amend.

//

//

//

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 18

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (ECF No. 13) is **GRANTED**.

2. Plaintiff is granted leave to amend its complaint as to its equal protection and takings claims.  Plaintiff may file an Amended Complaint within **14-days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED April 14, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 19